IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-279-CR




NAOMI EASLEY,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE

 




NO. 3-90-337-CR




NAOMI EASLEY MOORE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE

 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NOS. 73,950 & 100,247, HONORABLE TOM BLACKWELL, JUDGE PRESIDING



 



PER CURIAM

 In 1984, appellant was convicted of aggravated assault and placed on probation for
ten years. In 1986, appellant married Kent Moore. On November 6, 1989, appellant shot her
husband five times, killing him. A jury found appellant guilty of murder and assessed punishment
at imprisonment for seventy-five years. Cause number 3-90-337-CR is an appeal from the judgment of conviction for murder. At the conclusion of the jury trial, the district court
revoked appellant's probation and sentenced her to imprisonment for ten years. Cause number
3-90-279-CR is an appeal from the order revoking probation. Appellant brings forward the same
points of error in each appeal. 

 In her first two points of error, appellant contends the district court erred by
admitting in evidence State's exhibits 27 and 28. The exhibits are letters written by appellant to
the pastor of an Austin church following her arrest. Appellant argues that the letters were
privileged communications to a clergyman. Tex. R. Crim. Evid. 505. Under the rule, a person
has a privilege to prevent the disclosure of a confidential communication by the person to a
clergyman in his professional character as spiritual adviser. 

 In both letters, appellant urged the pastor to testify that she was with him at the
time her husband was killed. The letters warned the pastor that if he did not agree to so testify,
appellant would be forced to reveal "the full truth" about their "personal relationship." The tenor
of the letters can be shown by quoting a few paragraphs. In the first of the two letters, appellant
wrote:



 Well my friend -- I must say that I am very disappointed in you. I expected
you to come here and discuss this matter after you received my last letter. It's
beginning to look like you are not my friend after all.


 . . . .


 . . . [Y]ou are my ace in the whole [sic]. I need to know now if you're
willing to take a chance -- suffer a little (a lot) embarrassment and come to court
and testify that I was with you at the time my husband was killed.


 Believe me, I don't want it to become public knowledge that we've been
seeing each other.


 . . . .


 If you decide not to testify, that's OK -- I can't make you. I'll have to go
it alone. But, that means I'll have to tell the full truth in order to explain why you
will not come forth. . . . Even if you deny it all -- you know how people are --
they are use [sic] to seeing me at your church where ever you preach -- they'll put
two & two together and realize that I'm telling the truth.



The second letter warns:



 You may as well come talk to me or call my lawyer. A court order can
make you come to court. Of course we cannot make you say that I was with you
that night, but this will turn into a very ugly battle between you and I [sic].


 . . . .


 The ball is in your court. You make the next play. You can make it easy
or you can play hard ball and we all get battered and bruised. The choice is
yours.[ (1)]



 The privilege for confidential communications to clergymen is of recent vintage,
and there are no reported decisions under either the criminal or civil rule. See 33 Steven Goode,
Olin G. Wellborn III, & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and
Criminal § 505.1 (Texas Practice 1988). The privilege in Texas is broader than in some
jurisdictions because the communication need not be penitential in order to qualify for protection. 
Id. Nevertheless, not every private conversation with or letter to a member of the clergy is
privileged. The privilege extends only to communications that are addressed to a clergyman in
his professional capacity. 

 The district court correctly found that appellant's letters were not written to the
pastor in his professional character as spiritual adviser. There is nothing in either letter that can
remotely be characterized as a request for spiritual guidance or consolation. The letters were
nothing more than open threats to destroy the pastor's reputation if he did not provide appellant
an alibi, and could as easily have been addressed to any other man with whom appellant had or
could claim to have had a "personal relationship." The district court did not err in overruling
appellant's claim of privilege under rule 505. Points of error one and two are overruled.

 In point of error three, appellant complains of jury argument by the prosecutor at
the guilt stage of trial. At the time the challenged remark was made, the prosecutor was
discussing the contents of the tape recording of the victim's 911 call.



 [H]e is groaning in agony on the floor of his bedroom . . . he is asking the
Lord to help him, over and over again, because, ladies and gentlemen, he had seen
the devil. He had seen this woman come into his room. He was awakened by that
first belly shot, put his hand up, saw her face, was shot in the hand twice, twisted
his body in an effort to get away from her, was shot in the right chest and then
finally was shot in the head.



Although she did not object at trial, appellant now contends that the reference to her as "the devil"
was improper personal abuse. Grant v. State, 472 S.W.2d 531, 534 (Tex. Crim. App. 1971);
Swilley v. State, 25 S.W.2d 1098, 1099 (Tex. Crim. App. 1929).

 A failure to object waives any impropriety in jury argument unless the argument
is so prejudicial that an instruction to disregard would not have cured it. Romo v. State, 631
S.W.2d 504, 505 (Tex. Crim. App. 1982); Tex. R. App. P. 52(a). A reference to the defendant
as "an animal" has been held to be curable by instruction. Tompkins v. State, 774 S.W.2d 195,
218 (Tex. Crim. App. 1987). We conclude that, under the circumstances of this cause, any error
in the prosecutor's argument was waived by appellant's failure to object. The third point of error
is overruled.

 In cause number 3-90-279-CR, the order revoking probation is affirmed. In cause
number 3-90-337-CR, the judgment of conviction is affirmed. 


[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed on Each Cause

Filed: September 23, 1992

[Publish] 

1.   The pastor took these letters to the police. At trial, he testified that appellant's
husband and his family were members of his church, that he knew appellant and that she
had visited him in his home, and that he had no physical or sexual relationship with
appellant. He also testified that appellant was not with him on the night of the shooting.